UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| REVOL GREENS, GBC,<br><br>Plaintiff,<br><br>v.<br><br>BIOTA NUTRI B.V.,<br><br>Defendant. | Civil No. 23-1183 (JRT/TNL)<br><br>**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |

---

Alicia E. Olszeski, **BRYAN CAVE LEIGHTON PAISNER LLP**, 56 Marshall Place, St. Louis, MO 63119; Bojan Manojlovic, Bradley R. Prowant, and Marc A. Al, **STOEL RIVES, LLP**, 33 South Sixth Street, Suite 4200, Minneapolis, MN 55402; Mark Lenihan, **BRYAN CAVE LEIGHTON PAISNER LLP**, One Metropolitan Square, 211 North Broadway, Suite 3600, St. Louis, MO 63102, for Plaintiff.

Daniel J. Cragg and Robert T. Dube, Jr., **ECKLAND & BLANDO, LLP**, 800 Lumber Exchange, 10 South Fifth Street, Minneapolis, MN 55402, for Defendant.

Plaintiff Revol Greens, GBC ("Revol") brings this breach of contract claim against Defendant Biota Nutri B.V. ("Biota"), alleging that Biota breached the parties' Memorandum of Understanding ("MOU") by selling proprietary fertilizer to another company in the United States. Biota argues that the MOU is unambiguous, and the Court can decide as a matter of law that instead of breaching, Biota just terminated the MOU. Based on this purportedly unambiguous reading, Biota filed a Motion to Dismiss. Because Revol also offers a reasonable interpretation of the MOU, the contract is ambiguous, and

resolution requires a fact analysis not appropriate on a Motion to Dismiss. Thus, the Court will deny Biota's Motion to Dismiss.

## BACKGROUND

Plaintiff Revol is a Minnesota-based corporation that sells organic leafy greens. (Compl. at 1, ¶ 1, Apr. 26, 2023, Docket No. 1.) Defendant Biota is a Netherlands-based corporation that produces and sells specialized fertilizers. (*Id.* at 1, ¶ 2.) In early 2020, Revol and Biota began a relationship to develop an organic fertilizer system to expand Revol's leafy green production. (*Id.* ¶ 9.)

For the next six months, Biota and Revol worked together to develop a unique organic fertilization process and install the related infrastructure at Revol's growing facilities. (*Id.* ¶ 17.) To protect the confidential information shared in developing the fertilizer, the parties entered into a Mutual Confidentiality and Non-Disclosure Agreement ("NDA"). (*Id.* ¶¶ 10–11.) Once the parties developed the unique fertilizer, they memorialized their agreement in an MOU. (*Id*. ¶¶ 18–19.) The MOU included requirements that Biota supply, and Revol purchase, enough fertilizer to meet all of Revol's projected needs for the duration of the MOU: ten years with a review period after five. (*Id.* ¶¶ 24, 26.) The agreement specified that Biota could not market or sell this unique fertilizer or any other organic fertilizers to other companies in the United States to produce leafy greens. (*Id.* ¶ 23.) However, Biota could terminate the agreement if "Revol[']s purchase volume from Biota [did] not grow at an annualized rate of 15% with

2020 being the base year for calculation."[1] (Compl., Ex. 2 ("MOU") ¶ 7, Apr. 26, 2023, Docket No. 1-2.)

Over the next couple of years, Revol continued to grow leafy greens, and Biota continued to provide fertilizer. (Compl. ¶¶ 30, 32.) Revol purchased 37,665 liters, 218,680 liters, and 215,357 liters of organic fertilizer from Biota in the years 2020, 2021, and 2022, respectively. (*Id.* ¶¶ 33, 34.)

Revol alleges that this mutually beneficial business relationship was disrupted in early 2023 when Revol learned that Biota had sold organic fertilizer to another company in the United States for the purposes of growing organic leafy greens. (*Id*. ¶ 39.) Specifically, Revol refers to a sale made on February 27, 2023 to AppHarvest Berea Farm, LLC ("AppHarvest"). (*Id.* ¶ 41.) Biota did not dispute that this sale occurred. (*Id.* ¶ 46.) Instead, Biota claims it was a proper termination of the MOU because Revol failed to meet its annual growth requirements. (Def.'s Mem. Supp. Mot. Dismiss at 4, June 23, 2023, Docket No. 23.)

Revol confronted Biota about its sale to AppHarvest. (Compl. ¶ 45.) Biota responded by explicitly rescinding any agreement besides the NDA and expressing an intent to continue selling organic fertilizers to other companies in the United States. (*Id.* ¶¶ 48, 51.) Revol then brought this action against Biota alleging breach of the MOU, NDA,

---

[1] This clause will be hereafter be referred to as the "termination clause."

and anticipatory breach of the MOU. (*See id.* ¶¶ 65, 84, 93.) In lieu of an answer, Biota filed a Motion to Dismiss on counts I and III, breach of the MOU and anticipatory breach of the MOU. (Mot. Dismiss, June 23, 2023, Docket No. 22.)

## DISCUSSION

### I.   STANDARD OF REVIEW

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in the plaintiff's favor. *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Although the Court accepts the complaint's factual allegations as true and construes the complaint in a light most favorable to the plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). In other words, a complaint "does not need detailed factual allegations" but must include more "than labels and conclusions, and a formulaic recitation of the elements" to meet the plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## II.     BREACH OF CONTRACT

Biota moves to dismiss counts I and III, arguing that the termination clause unambiguously states that it terminated, not breached, the MOU, which can be decided as a matter of law. When determining whether a contract is unambiguous, courts "must give the contract language its plain and ordinary meaning." *Current Tech. Concepts v. Irie Enters.*, 530 N.W.2d 539, 543 (Minn. 1995). Whether a contract is ambiguous is a question of law for the Court to decide. *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (Minn. 2003). "A contract is ambiguous only if its language is reasonably susceptible to more than one interpretation." *Winthrop Res. Corp. v. Sabert Corp.*, 567 F. Supp. 2d 1084, 1091 (D. Minn. 2008) (citing *Art Goebel, Inc. v. N. Suburban Agencies, Inc.*, 567 N.W.2d 511, 515 (Minn. 1997)). Ambiguity does not exist simply because the parties may disagree as to the proper interpretation of a contract's language. *Esanbock v. Weyerhaeuser Co.*, 367 F. Supp. 3d 925, 937 (D. Minn. 2019). The interpretation of an ambiguous term is a factual question which does not allow for dismissal under Federal Rule of Civil Procedure 12(b)(6). *See Denelsbeck*, 666 N.W.2d at 346.

The parties present competing arguments for the meaning of the termination clause in the MOU. Biota argues that the 15% purchase increase requirement in the termination clause should be calculated based on each prior year's actual sales. Under Biota's interpretation, Revol would have been required to purchase 251,482 (218,680 x 115%) liters in 2022. Because Revol only purchased 215,337 liters of fertilizer in 2022, Biota argues that it could terminate the MOU on that basis. In contrast, Revol argues that

the 15% purchase increase requirement in the termination clause should instead be calculated by reference to the 2020 base year. Based on the 37,665 liters purchase in 2020, under Revol's reading, its purchase requirement would be met if it purchased at least 43,314 liters in 2021 (37,665 x 115%) and 49,812 in 2022 (43,314 x 115%). Given that Revol purchased well in excess of these amounts in 2021 and 2022, it believes it satisfied its obligations under the MOU.

Competing perspectives alone, however, do not defeat unambiguity; only when both interpretations are reasonable does the contract become ambiguous. *Esanbock*, 367 F. Supp. 3d at 937. That is the case here. The termination clause simply states that Biota may terminate the agreement if Revol's purchase volume "does not grow at an annualized rate of 15% with 2020 being the base year for calculation." (MOU ¶ 7.) The termination clause does not further define any of the terms. (*Id.*) Biota argues that the growth must occur based on the actual purchases year over year. But another reasonable reading is that the growth must just be continuous from the base year of 2020. In both instances, Revol's minimum purchase requirement of Biota's fertilizer grows annually.

Biota specifically counters Revol's reading by claiming it is unreasonable because it makes the purchase amounts highly volatile. However, an unfavorable term in a contract does not make it unreasonable if the contract is a result of a bargained for exchange. *Cf. Kauffman Stewart, Inc. v. Weinbrenner Shoe Co., Inc.*, 589 N.W.2d 499, 503

(Minn. Ct. App. 1999). Biota's uncertainty in Revol's future purchasing is not sufficient to render Revol's interpretation unreasonable.

The termination clause has more than one reasonable interpretation and is therefore ambiguous as a matter of law.[2] Interpretation of the ambiguous clause is a question of fact that cannot be determined at the motion to dismiss stage. Thus, the Court will deny Biota's Motion to Dismiss.

## CONCLUSION

The parties present different, reasonable readings of the termination clause in the MOU. Because a court can only interpret unambiguous contract terms at the motion to dismiss stage, the meaning of the termination clause is a factual question. As such, the Court will deny Biota's Motion to Dismiss.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [Docket No. 22] is **DENIED**.

DATED: January 10, 2024
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge

---

[2] Revol encourages the Court to find a breach of the MOU irrespective of the ambiguity decision because Biota did not attempt to terminate the MOU until after selling to another company. However, because the Court finds the contract ambiguous, it will not address whether a breach occurred or the sufficiency of any alleged termination.